UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRAND CANYON TRUST,<br><br>    Plaintiff,<br><br>  v.<br><br>RYAN ZINKE, in his official capacity as Secretary of the Interior, *et al.*,<br><br>    Defendants. | Civil Action No. 17-849 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, Grand Canyon Trust, seeks attorney's fees and costs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), arising from the plaintiff's underlying FOIA requests to defendants, the Department of the Interior's Office of the Secretary ("DOI-OS") and Bureau of Land Management ("BLM"), for documents regarding an order issued by the Secretary of the Interior concerning the Federal Coal Program, *see* Compl. ¶ 2, ECF No. 1. Within thirteen months of submitting the FOIA requests and four months of the filing of the complaint, the defendants disclosed, in whole or in part, 65,353 pages of records, which disclosures fully discharged the defendants' obligations under the FOIA. The parties reached a settlement regarding document production issues but contested the issue of attorney's fees. For the reasons set forth below, the plaintiff's Motion for Attorney Fees and Costs, Pl.'s Mot. Att'y's Fees ("Pl.'s Mot."), ECF No. 17, is denied because the plaintiff is ineligible for a fee award.

**I.  BACKGROUND**

The plaintiff Grand Canyon Trust is "a non-profit corporation with over 3,500 members" and the mission "to protect and restore the lands, ecosystems, and environment of the Colorado Plateau, including those federal lands for which the mineral estate is owned or managed by the

1

federal government by and through the U.S. Department of the Interior and the Bureau of Land Management pursuant to the Federal Coal Program." Compl. ¶ 11.  In August 2016, the plaintiff submitted FOIA requests to the DOI-OS and BLM requesting "[a]ll documents and records concerning and supporting the development of the January 15, 2016 Secretarial Order 3338" and "[a]ll documents and records concerning the implementation of the January 15, 2016 Secretarial Order 3338, specific to Section 5, Pause of the Issuance of New Federal Coal Leases for Thermal Coal, and Section 6, Exclusions."  Pl.'s Mot., Ex. 1, Decl. of Eric Ames ("Ames Decl."), Ex. C, Correspondence between Grand Canyon Trust and DOI-OS ("DOI-OS Correspondence") at 12, ECF No. 17-1; *see also* Ames Decl., Ex. D, Correspondence between Grand Canyon Trust and BLM ("BLM Correspondence") at 46, ECF No. 17-1.[1]  The two defendants' responses are detailed below, followed by a summary of the ensuing litigation.

### A. The Plaintiff's FOIA Request to the Office of the Secretary

The DOI-OS acknowledged receipt of the plaintiff's August 2, 2016, request on August 16, 2016, and advised that the DOI-OS FOIA Office was "taking a 10-workday extension under 43 C.F.R. § 2.19" and would be "placing your request under the 'Complex' processing track." DOI-OS Correspondence at 17.  Two months later, on October 18, 2016, the plaintiff sent a letter to the DOI-OS "objecting to the Office of the Secretary's failure to issue a determination within the statutory deadlines in the FOIA" and requesting "an estimated completion date."  Compl. ¶ 33; *see also* DOI-OS Correspondence at 18–19.  The DOI-OS responded on October 20, 2016, explaining that the FOIA office was "continuing to search for records" and would "provide records to you on a rolling basis as they become available."  DOI-OS Correspondence at 21.  The DOI-

---

[1] The plaintiff submitted numerous declarations supporting its request for attorney's fees.  Although each declaration and exhibit has been reviewed, only those exhibits necessary to provide context for resolution of the instant motion are cited herein.

OS estimated that the agency's first response would be sent "on or about November 17, 2016." *Id.* Five days later, the DOI-OS again notified the plaintiff that the request was being processed. *Id.* at 22. Although the DOI-OS did not provide any files by November 16, 2016, the agency provided a "partial response" of 222 pages on December 2, 2016. *Id.* at 24; *see also* Compl. ¶ 36.

On January 17, 2017, the DOI-OS informed the plaintiff that its search had been completed and all responsive records located, noting that "the records are exceptionally voluminous—about 8,000 additional pages." DOI-OS Correspondence at 29. The DOI-OS further stated that although the office had "many requests that require our work and attention, we continue to work diligently on yours," with a final response expected "in early February." *Id.* On March 17, 2017, after not hearing from the DOI-OS in February, the plaintiff inquired about the timing of "a final response so that we can avoid taking additional steps to secure the public documents." *Id.* The DOI-OS promptly responded that the records were "currently with the Office of the Solicitor for comment," which is "the final, routine stage of review," and that the Office of the Solicitor "has a multitude of requests that require its attention" but was "working diligently to review the voluminous records that are responsive to your request." *Id.* In addition, the DOI-OS had located "several thousand additional pages of information" that were still being evaluated. *Id.* In April 2017, the DOI-OS informed the plaintiff that letters had been sent to several coal companies, notifying the companies that certain information submitted by the companies to the DOI-OS was responsive to the plaintiff's FOIA request and inviting the companies to submit any objections to the release of such information. *Id.* at 30–42.

Finally, on May 1, 2017, the plaintiff requested that the DOI-OS "identify the estimated completion date and provide a disclosure plan for the release of documents and records no later than the close of business on May 3, 2017." *Id.* at 45. On May 3, 2017, a FOIA Officer from the

3

DOI-OS spoke with the plaintiff and stated that "a large portion of the documents were being reviewed by the Office of the Solicitor" and that "the request would take at least another two months to finalize." Defs.' Answer ¶ 43, ECF No. 18. The plaintiff then filed this lawsuit on May 9, 2017.

According to the defendants, "as of the date of Plaintiff's Complaint, the Office of the Secretary had completed its search for all responsive documents [and] had produced the first partial response of 222 pages of records to Plaintiff." *Id.* ¶ 3. A second partial release of 5,830 pages of records was transmitted to the plaintiff on May 25, 2017, two weeks after the complaint was filed but without any action by the Court. *Id.* ¶ 38. On June 13, 2017, approximately one month after the complaint was filed, the DOI-OS transmitted a final release of 314 pages, resulting in a total 6,366 pages released to the plaintiff, still without any deadlines imposed by the Court. *See* Joint Status Report dated June 28, 2017 ("First JSR") at 1, ECF No. 12.

### B. The Plaintiff's FOIA Request to BLM

BLM responded to the plaintiff's August 2, 2016, request two days later and informed the plaintiff that the request "falls into the complex track," which "is for requests that can be processed in twenty-one to sixty workdays." BLM Correspondence at 49. On October 10, 2016, however, BLM allegedly informed the plaintiff "that it would require 'at least a year to compile and produce the responsive documents.'" Compl. ¶ 54. The plaintiff responded on October 17, 2016, requesting "an explanation for the estimated completion date." *Id.* ¶ 55; *see also* BLM Correspondence at 50–52. Ten days later, BLM responded that work was underway to "get[ ] you the responsive records as expeditiously as we can," with "rolling releases" shortly, and that the plaintiff would be contacted "no later than Tuesday, November 1 to provide you with either a timeline or records release schedule." BLM Correspondence at 53. On November 2, 2016, BLM informed the plaintiff that "the easiest way to provide you the records would be on a

4

monthly basis," *id.* at 54, but no records were produced in November 2016, Compl. ¶ 58. The plaintiff inquired about the promised records on December 1, 2016, and shortly thereafter, BLM released twelve pages of records. *See* BLM Correspondence at 54, 56–59; Compl. ¶ 61.

BLM continued reviewing records through January and February 2017. On January 3, 2017, BLM informed the plaintiff that it was "working through a substantial amount of your records" and "hop[ed] to have your records to you very soon." BLM Correspondence at 60. On February 28, 2017, acknowledging that the plaintiff was "looking for hard dates," BLM informed the plaintiff that DOI-OS had to finish reviewing "approximately 1,200 pages" of documents. *Id.* at 61. The FOIA Officer stated that, "[i]f everything goes accordingly with the second set of documents, you should have them by the end of March" and that "[g]etting the records to you has become one of my top priorities." *Id.* On May 1, 2017, after not receiving any additional records, the plaintiff sent a letter to BLM requesting "a revised estimated completion date" and "a disclosure plan for the release of the remaining documents and records no later than the close of business on May 3, 2017." *Id.* at 64. The plaintiff filed this lawsuit on May 9, 2017. After the complaint was filed, but without any court order directing disclosure, BLM released 569 pages to the plaintiff on June 30, 2017; 1,294 pages on July 28, 2017; and 57,112 pages on August 31, 2017, for a total of 58,987 pages. Defs.' Opp'n at 5.

### C. Litigation History

The plaintiff filed a complaint on May 9, 2017, seeking declaratory and injunctive relief under the FOIA. *See generally* Compl. On June 28, 2017, the parties filed their first Joint Status Report, in which the DOI-OS indicated that its response to the FOIA request was complete, with three separate releases of records: "222 pages of records on December 2, 2016; 5,830 pages of records on May 25, 2017, and 314 pages on June 13, 2017." First JSR at 1. BLM's search was "still underway," but the agency had "produced twelve responsive pages in December 2016" and

5

had agreed, without the Court's involvement, "to two releases, one on June 30, 2017 and the final production on August 31, 2017." *Id.* at 1–2. These disclosures were timely made, with 569 pages released on June 30, 2017, and 57,112 pages released on August 31, 2017, as well as 1,294 pages released on July 28, 2017. Defs.' Opp'n at 5. Three months later, the parties informed the Court that "[n]o document production issues remain." Joint Status Report dated Sept. 29, 2017 ("Second JSR") at 1, ECF No. 14. The plaintiff subsequently "indicated that the production [wa]s satisfactory," and the parties ultimately settled all claims other than the plaintiff's claim for attorney fees and other litigation costs, which motion is now pending before the Court. *See* Joint Status Report dated Oct. 27, 2017 ("Third JSR") at 1, ECF No. 15; Joint Status Report dated Dec. 8, 2017 ("Fourth JSR") at 1, ECF No. 16. The plaintiff seeks $68,047.82 in attorney's fees and litigation costs. *See* Pl.'s Reply Supp. Mot. Att'y's Fees ("Pl.'s Reply") at 15, ECF No. 19.

## II. LEGAL STANDARD

The FOIA authorizes the "assess[ment] against the United States [of] reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This provision "'was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold,' but instead 'had a more limited purpose—to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.'" *Davy v. CIA* ("*Davy II*"), 550 F.3d 1155, 1158 (D.C. Cir. 2008) (quoting *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977)).

The D.C. Circuit recognizes that "[t]he statute contains no express limitation on who counts as an eligible 'complainant' or whose work is compensable by payment of 'attorney fees,'" *Nat'l Sec. Counselors v. CIA*, 811 F.3d 22, 28 (D.C. Cir. 2016) (citation omitted), but this statutory provision has been interpreted to divide "the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee 'entitlement,'" *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)). Thus, the plaintiff must demonstrate both eligibility and entitlement to the award. *See McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014); *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984) ("[E]ligibility alone is not enough. . . . [T]he complainant must [also] show that he or she is 'entitled' to an award.") (citation omitted). Upon establishing both eligibility and entitlement, the plaintiff must then show the reasonableness of the fee request. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

To satisfy the eligibility requirement, the plaintiff must show that he or she "substantially prevailed" in the underlying FOIA litigation by gaining relief from either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Under the first prong, the claimant substantially prevails when "'the order changed the legal relationship between [the parties],' and [ ] the plaintiff 'was awarded some relief on the merits of his claim.'" *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 367 (D.C. Cir. 2008) (internal quotation marks omitted) (quoting *Davy v. CIA* ("*Davy I*"), 456 F.3d 162, 165 (D.C. Cir. 2006)). Under the second prong, or "catalyst theory," attorney's fees may be awarded solely due to a change in an agency's position, for example, when the plaintiff's lawsuit "substantially caused the

7

government to release the requested documents before final judgment." *Brayton*, 641 F.3d at 524–25; *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 232 (D.D.C. 2011) ("The key question under this 'catalyst theory' is whether 'the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation.'" (alteration in original) (quoting *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981))).[2]

If the plaintiff has substantially prevailed, the court proceeds to the entitlement prong. The D.C. Circuit "has long applied a multi-factor standard for evaluating whether a plaintiff who is eligible for attorneys' fees is also entitled to such fees." *McKinley*, 739 F.3d at 711. "Four non-exclusive factors typically govern the entitlement inquiry: '(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding' of the requested documents." *Id.* (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)); *see also Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013).[3] While "[n]o one factor is dispositive," "[i]f the Government's position is correct as a matter of law, that will be dispositive." *Davy II*, 550 F.3d at 1159, 1162. "The sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts*, 965 F.2d at 1094.

---

[2] The catalyst theory was utilized by this Circuit until 2001, when the Supreme Court held that "the 'catalyst theory' is not a permissible basis for the award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001). Congress responded by resurrecting the catalyst theory for FOIA cases in the Open Government Act of 2007. *See Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010). "The purpose and effect of this law, which remains in effect today, was to change the 'eligibility' prong back to its pre-*Buckhannon* form." *Brayton*, 641 F.3d at 525. As a result, "plaintiffs can now qualify as 'substantially prevail[ing],' and thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims." *Id.* (alteration in original).

[3] The D.C. Circuit's four-factor test for assessing a FOIA plaintiff's entitlement to attorney's fees has been criticized for "hav[ing] no basis in the statutory text" and being "arbitrary and inconsistent with the structure and purposes of FOIA." *Morley*, 719 F.3d at 690–91 (Kavanaugh, J., concurring) (recommending that "[w]e should ditch the four-factor standard").

8

If the plaintiff has established eligibility and entitlement, the plaintiff must then establish the reasonableness of the calculation in its fee request. *See Covington*, 57 F.3d at 1107. The reasonableness determination involves three parts: "(1) determination of the number of hours reasonably expanded [sic] in litigation; (2) determination of a reasonable hourly rate or 'lodestar'; and (3) the use of multipliers as merited." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (citation omitted). The plaintiff must submit evidence regarding "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. The reasonable hourly rate is most commonly determined by the *Laffey* Matrix, which "sets out a general guideline for awarding attorneys' fees based on experience . . . adjusted for inflation." *Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015). Provided that the plaintiff has submitted the required information, the presumption is that the number of hours billed and the hourly rates are reasonable. *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010). The burden then shifts to the defendant to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F.3d at 1110 (internal quotation marks omitted).

## III. DISCUSSION

The plaintiff contends that it substantially prevailed in this litigation and is eligible for attorney's fees, based on the catalyst theory, because the defendants "fail[ed] to comply with FOIA deadlines before the Complaint was filed" and because "[i]t was not until after the Trust filed suit" on May 9, 2017, "that the agencies complied with their FOIA duties and a series of deadlines were negotiated for releasing the requested documents." Pl.'s Mot. at 3–4; Pl.'s Reply Supp. Mot. Att'y's Fees ("Pl.'s Reply") at 1–7, ECF No. 19. The defendants counter that the plaintiff "is not eligible for an award of attorney fees because it has not substantially prevailed,"

given that the "the combined backlog of over 180 FOIA requests served as an unavoidable delay in the agencies' ability to respond in the expedient time frame requested by the Plaintiff." Defs.' Opp'n at 6, 8 (capitalization omitted). For the reasons explained below, the defendants are correct.

To meet the substantially prevailed prong of the eligibility requirement, the plaintiff must demonstrate that "the institution and prosecution of the litigation cause[d] the agenc[ies] to release the documents obtained during the pendency of the litigation." *Church of Scientology*, 653 F.2d at 587. The law in this Circuit is well established that causation requires more than correlation. Thus, in the context of FOIA attorney's fees, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg*, 745 F.2d at 1496; *see also Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 205 (D.D.C. 2016). Although timing is a relevant factor, something "more than *post hoc, ergo propter hoc* must be shown." *Pub. Law Educ. Inst. v. U.S. Dep't of Justice*, 744 F.2d 181, 183 (D.C. Cir. 1984); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* ("*CREW*"), 83 F. Supp. 3d 297, 303 (D.D.C. 2015) ("Although the time between the plaintiff's initiation of this lawsuit and the agency's release of responsive records is indeed a salient factor in the Court's analysis, it is by no means dispositive evidence of causation." (citing *Pub. Law Educ. Inst.*, 744 F.2d at 184 n.5)). Rather, "[t]he sole question" in such cases "is whether the plaintiff's lawsuit was *necessary* for its attainment of the requested documents." *CREW*, 83 F. Supp. 3d at 307 (emphasis in original) (citing *Weisberg*, 745 F.2d at 1496).

The plaintiff has not met this standard. Rather, the evidence submitted by the plaintiff in support of its fee motion makes clear that both the DOI-OS and BLM had begun processing the plaintiff's request well before this lawsuit was initiated and that both agencies had even made partial releases to the plaintiff before the complaint was filed. *See, e.g.*, DOI-OS Correspondence

at 24–28 (transmitting 222 pages to the plaintiff 5 months before complaint was filed); BLM Correspondence at 53, 56–59 (informing the plaintiff that the agency was "begin[ning] the process to start sending you rolling releases" and then transmitting 12 pages as a partial release 5 months before complaint was filed). Both agencies completed their disclosures within four months of the start of litigation, and these disclosures were satisfactory to the plaintiff. *See* Second JSR at 1. Based on this timeline and the record in this case, the plaintiff has failed to show that this suit "cause[d] the agenc[ies] to release the documents." *Church of Scientology*, 653 F.2d at 587.

In addition, the D.C. Circuit repeatedly has acknowledged that if "an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request," rather than "the threat of an adverse court order," then "it cannot be said that the complainant substantially prevailed in [its] suit." *Id.* at 588 (internal quotation marks omitted). To that end, in order to "prevent plaintiffs from being the beneficiaries of purely extrinsic factors," courts must "look at the circumstances surrounding disclosure. When disclosure is triggered by events unrelated to the pending lawsuit, the causal nexus is missing and the plaintiff cannot be deemed a 'prevailing party.'" *CREW*, 83 F. Supp. 3d at 303 (citing *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Justice*, 750 F.2d 117, 119–21 (D.C. Cir. 1984)). Indeed, "Congress did not enact the fee-shifting provision of FOIA to punish agencies for their slowness in processing FOIA requests, but to reward plaintiffs whose filing of lawsuits alters the government's slowness and brings about disclosure." *Terris, Pravlik & Millian, LLP v. Ctrs. for Medicare & Medicaid Servs.*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011).

In this case, the defendants have explained that, "[a]t the time Plaintiff submitted its requests," both the DOI-OS and BLM had a substantial backlogs in processing FOIA requests. Defs.' Opp'n at 2. Specifically, as of September 2016, shortly after the plaintiff's FOIA request

11

was submitted, the DOI-OS and BLM had backlogs of 33 and 153 FOIA requests, respectively, with the plaintiff's requests "immediately placed in the queue to be worked on in the order they were received." *Id.*; *see also id.* at 8 ("[T]he combined backlog of over 180 FOIA requests served as an unavoidable delay in the agencies' ability to respond in the expedient time frame requested by the Plaintiff."); Defs.' Answer ¶ 54. The plaintiff's exhibits in support of its fee motion reflect the agencies' preexisting backlog and show that, despite these backlogs, the agencies' FOIA offices diligently worked to satisfy the plaintiff's requests. *See, e.g.*, DOI-OS Correspondence at 22 (noting that "processing various drafts of the same record requires a line-by-line analysis, which can be time consuming," and that "to provide a timely response, we will work to first respond with all non-draft records that we have located"); *id.* at 23 (providing a partial response four months after request was filed and five months before complaint was filed); *id.* at 29 (noting that 8,000 additional pages had been located and that although the DOI-OS "ha[s] many requests that require our work and attention, we continue to work diligently on yours"); BLM Correspondence at 54 (noting that a second set of documents "is a substantially larger release of documents, so it make take a couple days longer past" the previously stated deadline); *id.* at 55 (updating the plaintiff that BLM was "working through a substantial amount of your records and [was] almost done reviewing them"); *id.* at 56 (providing an interim release four months after the plaintiff's request was filed and five months before complaint was filed). Thus, the plaintiff has not established that the threat of an adverse court order prompted the disclosures ultimately made in this case. Instead, the record shows that "an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency[ies'] failure to respond to [the] request." *Church of Scientology*, 653 F.2d at 588 (internal quotation marks omitted).

The plaintiff points to the defendants' failure to produce "a single declaration or piece of documentary evidence to support this narrative" of agency backlog, Pl.'s Reply at 2, and argues that "when the government seeks to rebut evidence presented in a fee motion, 'it must provide—just as plaintiff must provide specific evidence in his application for attorney's fees—equally specific countervailing evidence,'" *id.* (internal quotation marks omitted) (quoting *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 24 (D.D.C. 2004)). This argument takes *Piper* out of context. While the *Piper* court concluded that the government must provide "equally specific countervailing evidence," *Piper*, 339 F. Supp. 2d at 24 (internal quotation marks omitted), this was not for the purpose of showing that the plaintiff is ineligible for fees. Rather, "[w]hen the Government seeks to *rebut a rate or calculation or hours billed*, it must provide—just as plaintiff must provide specific evidence in his application for attorney's fees—'equally specific countervailing evidence.'" *Id.* (quoting *Nat'l Ass'n of Concerned Veterans v. Sec. of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)). In this case, neither rates nor calculations nor hours billed is at issue, given that the plaintiff has failed to establish eligibility for attorney's fees. Accordingly, the defendants' lack of supporting declarations does not warrant an award of fees for the plaintiff.

The other cases relied on by the plaintiff do not suggest a different result. The plaintiff contends that, "[i]n a similar scenario, a district court found a plaintiff organization was eligible for fees when the agency 'failed to inform Plaintiffs of an estimated completion date.'" Pl.'s Reply at 5 (quoting *Sierra Club v. EPA*, 75 F. Supp. 3d 1125, 1146 (N.D. Cal. 2014)). In that case, however, the plaintiff was eligible for attorney's fees because the court had approved a stipulation between the parties regarding a briefing schedule, requiring the agency to release records by a specified date and thereby "chang[ing] the legal relationship between the parties." *Sierra Club*, 75 F. Supp. 3d at 1141. Similarly, the plaintiff argues that "an agency's 'sudden acceleration' in

processing a FOIA request may lead to the conclusion that the lawsuit substantially caused the agency's compliance with FOIA." Pl.'s Mot. at 2 (quoting *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.* ("*EPIC*"), 218 F. Supp. 3d 27, 41 (D.D.C. 2016)). In *EPIC*, as in *Sierra Club*, the Court held that the plaintiff had "substantially prevailed in this litigation as a result of the issuance of [a] Scheduling Order" requiring that the government "produce documents by a date certain," thereby "chang[ing] the legal relationship between the parties." *EPIC*, 218 F. Supp. 3d at 40. No such scheduling orders have been entered in this case—in fact, the only scheduling order issued in this case governed briefing for the pending fee motion. *See* Minute Order (Dec. 8, 2017). Based on the evidence and the record in this case, the plaintiff has failed to establish that "the institution and prosecution of litigation cause[d] the agenc[ies] to release the documents obtained during the pendency of the litigation." *Church of Scientology*, 653 F.2d at 587.

  The plaintiff's attempt to distinguish the cases relied on by the defendants fares no better. The plaintiff contends that *Calypso Cargo v. U.S. Coast Guard*, 850 F. Supp. 2d 1 (D.D.C. 2011), is distinguishable because the defendant in that case "provided multiple declarations to support its argument that the suit did not accelerate its document production." Pl.'s Reply at 6. Although the defendants produced no declarations in this case, the evidence submitted by the plaintiff points to the same conclusion. As in *Calypso Cargo*, the record here makes clear that "multiple divisions within the [defendant agencies] had already begun coordinating and processing the plaintiff['s] request before plaintiff[ ] filed [its] lawsuit." *Calypso Cargo*, 850 F. Supp. 2d at 5. The plaintiff also argues that *Church of Scientology* is distinguishable because in that case "the Court of Appeals actually reversed a denial of fees by the district court where documents were provided after suit was filed, even though the agency had, as here, begun the processing the [sic] request before suit was filed." Pl.'s Reply at 6 (citing *Church of Scientology*, 653 F.2d at 588–

89). In that case, however, the agency had informed the plaintiff that no responsive records existed and did not change its position until responding to interrogatories and appearing for depositions during the litigation. *Church of Scientology*, 653 F.2d at 585–86. The "critical point" for the D.C. Circuit was that "but for the institution and prosecution of this suit, the documents ultimately obtained by [the plaintiff] would never have been identified and therefore would never have been released." *Id.* at 588. By contrast, actual production of records in this case began five months *before* the complaint was filed. *See* DOI-OS Correspondence at 24–28; BLM Correspondence at 56.

The plaintiff also attempts to distinguish *Short v. U.S. Army Corps of Engineers*, 613 F. Supp. 2d 103 (D.D.C. 2009), and *Harvey v. Lynch*, 178 F. Supp. 3d 5 (D.D.C. 2016), on the ground that the requests in those cases "had already been completed by the time [the plaintiff] filed suit," Pl.'s Reply at 7 (quoting *Harvey*, 178 F. Supp. 3d at 8). In *Short*, a preliminary determination had been made to grant the plaintiff's request, but the request was misplaced and the agency was reminded of the request only after the lawsuit was filed, at which point the agency conducted its search and released the records at issue. *Short*, 613 F. Supp. 3d at 105. Even so, the court concluded that the complaint "did not cause the [agency] to change its position" given the earlier determination. *Id.* at 107 (internal quotation marks omitted). Likewise, in *Harvey*, the agency had not produced any records by the time the complaint was filed, but one week after filing, the agency sent the plaintiff a satisfactory release. *Harvey*, 178 F. Supp. 3d at 6. The court concluded that "the bulk of the work to process Harvey's FOIA request had already been completed by the time Harvey filed suit" and that, "at most," the complaint "prompted [the defendant] . . . to wrap up work that had already been taken almost to completion." *Id.* at 7–8. Similar conclusions can be reached in this case: both agencies made partial releases five months

15

prior to the complaint, and by the date of the complaint, the DOI-OS had completed its search. Answer ¶ 3; *see also* DOI-OS Correspondence at 24–28; BLM Correspondence at 56. The plaintiff's complaint thus did not cause the agencies to change their positions regarding the plaintiff's requests.

Finally, the plaintiff seeks to distinguish *Mobley v. Department of Homeland Security*, 908 F. Supp. 2d 42 (D.D.C. 2012), because in that case "'the plaintiffs received no documents' after filing suit." Pl.'s Reply at 7 (quoting *Mobley*, 178 F. Supp. 3d at 8). In *Mobley*, the government "voluntarily processed the plaintiffs' request only three weeks after the complaint was filed," and the plaintiffs then voluntarily dismissed their complaint. *Mobley*, 908 F. Supp. 2d at 48. Although the plaintiffs' fee motion was untimely, the court noted that "voluntary compliance very early in a FOIA litigation, like the government's compliance here, should be encouraged rather than punished" by the imposition of fees. *Id.* at 49. Indeed, the Senate Judiciary Committee Report accompanying the FOIA noted that "[i]f the government is forced to pay attorney's fees even if it settles a lawsuit without court action . . . then we may well find that the government is less inclined to settle FOIA lawsuits." *Id.* (alterations in original) (quoting S. REP. NO. 110-59, at 14). The parties in this case likewise were able to resolve all document production issues without the Court's involvement, and "[a]lthough it would have been ideal for the defendant to process the plaintiff['s] request from the very beginning, the government's compliance with the plaintiff['s] request so early in the litigation is not the sort of agency behavior that Congress intended to prevent by awarding attorney's fees." *Id.* at 48.

The plaintiff has failed to establish eligibility for attorney's fees and costs. Accordingly, the plaintiff's entitlement to attorney's fees and the reasonableness of the plaintiff's request need not be considered, and the plaintiff's motion is denied. *See Pub. Law Educ. Inst.*, 744 F.2d at

184 ("Since [the plaintiff] is not eligible for an award of attorney's fees and litigation expenses, we have no occasion to comment on the factors that would bear on [the plaintiff's] entitlement.").

## IV. CONCLUSION

For the foregoing reasons, the plaintiff is not eligible for attorney's fees under § 552(a)(4)(E) because the plaintiff has not "substantially prevailed" in this litigation. Accordingly, the plaintiff's Motion for Attorney's Fees and Costs, ECF No. 17, is denied. An appropriate Order accompanies this Memorandum Opinion.

Date: May 24, 2018

_____
BERYL A. HOWELL
Chief Judge